in a foreign proceeding in a foreign proceeding. All right, just give us one second, Mr. Altebette, let's let him clear out. All right, so it's Mr. Altebette, am I pronouncing that right? Correct. All right, Mr. Altebette, you are reserved one minute for rebuttal, so that gives you nine minutes now. You may proceed. Good morning. May it please the Court, my name is Edward Altebette, and I represent the appellants Dr. Douglas Schottenstein and his medical practice, Schottenstein Pain and Neuro. Appellants have raised multiple reasons why they believe the district court erred. This morning, I'd like to spend my time discussing two of those issues. In particular, if we have time, I'll move on to the additional issues. But the two issues I'd like to discuss this morning involve whether the district court erred in connection with its construction and interpretation of the second statutory requirement under 1782 by permitting pre-suit discovery by a foreign citizen in a private contract dispute with U.S. citizens. Two, whether the district court erred by not adjusting the discretionary part of its analysis, as we believe it was required to do, under the Supreme Court's decision in Atlantic Marine, because there is a mandatory forum selection clause here. It is undisputed that there is a mandatory forum selection clause here. It's undisputed that the contract is a German law contract, not a common law contract. It's undisputed that there is no discovery permitted under German civil procedure, which is called the ZPO. I think they do dispute that, whether discovery is available. Whether discovery can be used, I guess, is what's – Well, I guess that's two – They're arguing that the discovery that they obtain here, if they get it, can be used in the German suit to be filed. I think that's a slightly different issue, right? Whether or not you can actually physically submit documents to a court that doesn't have any rules of evidence in particular is one thing. But the issue there is, under the ZPO, there is no discovery under German law. There is no phase of a litigation that is devoted to the collection and gathering of evidence. There is no requirement under the ZPO that a party disclose information that is unfavorable to it. Look, I think there's no doubt that Germany and the United States have different discovery rules and that the United States is much more expansive, no question about that. But I guess the question is, why does a forum selection clause, the selection of a forum selection clause, carry with it the implication that you can't make use of any other means of gathering evidence from other countries? I mean, it's not clear to me that one follows from the other. Well, here, there's a difference here, okay, because there is no actual lawsuit. There is a contemplated German proceeding. That is what they've represented over the last two and a half years. Well, that's a different argument that you've made in your briefs, but at least for now, I want to just focus on, you're saying that a forum selection clause should be perceived as also containing implicitly a disavowal of using 1782 in the United States. Certainly, the parties could have contracted for that if they wanted to, but it's not clear to me why we should assume that a forum selection clause includes that additional piece. Well, I take you to Atlantic Marine, right? What Atlantic Marine says is when you have a forum selection clause, you've waived, the plaintiff has waived that privilege because they've already agreed. Waived what privilege? The privilege of choosing a different forum. Yeah, they can't choose a different forum, but using 1782 is not using a different forum. That's just using a tool that's available to litigants in the United States where evidence is here. Well, no, that's not a tool that's available. So your view is that a forum selection clause also would bar you from using letters of repertory to get evidence? No. What's the difference? Well, there's an important difference here, particularly since there is no actual litigation. There is no comedy interest implicated. Back to the first, the other issue. Assuming there were a litigation pending in Germany, does a forum selection clause preclude the use of a 1782 proceeding in the U.S.? No. No, and I think the model of that is actually in re BM Brazil, which is a— Okay, so your argument is that there is no pending litigation, it seems, then. There is no— That's your principal argument. That is the principal argument, and then here on the facts here, right, there is no pre-suit discovery. There is no discovery. I think what BM Brazil illustrates is a rigorous— Do cases allow 1782 discovery where there is reasonable contemplation of a lawsuit abroad? There are certainly a couple of district court cases that errantly so rule, but that's not the rule from Intel. You're saying that there cannot be 1782 discovery unless there's an actual pending foreign lawsuit. Let me clarify that very carefully. Where it is in contemplation of a private civil lawsuit as between two private parties, there must be a pending litigation. There must be. And what's your support for that assertion? Intel. Intel. Intel explicitly says, it rejects the view of the Second Circuit at the time in Ishihara that Section 1782 comes into play only when adjudicated proceedings are pending or imminent. It rejects that view. Respectfully, that's not quite what Intel says there. Ishihara was an administrative dispute. That was a dispute involving a patent office application. If you look to the two cases cited right after the holding, one by Justice Ginsburg herself, those involve prosecutions in one case by the English Crown. Intel did not establish and does not stand for the proposition that where a private litigant is thinking about suing in a foreign jurisdiction, they get pre-suit discovery. Okay. But, I mean, certain funds is 2015. And there we said that the person seeking 1782 discovery has to, quote, provide some objective indicium that the action is being contemplated. Well, but in certain I think you don't like it, but we're kind of bound by that, aren't we? Oh, but I don't think certain funds says that. I think But you quoted it. Well, but certain funds says later on in the opinion, right? The court there went on to say, and in fact, it affirmed Judge Buchwald's decision finding that there was no proceeding. The second statutory requirement had not been met. There, in certain funds, the court said, right, it's the distinction here is whether or not there's adjudicative proceedings versus whether or not there are investigatory proceedings by a governmental authority. Okay. And so you have to read Intel in light of ZF Automotive, which is the Supreme Court's last pronouncement on this, where the Supreme Court reversed this court's decision in Alex Partners, attempting to expand 1782 discovery in connection with arbitrations. That's not explaining to me what that has to do with the issue before us at all. Well, the issue before you is there's no reasonable contemplation standard in Intel, right? That ignores the fact that there are two really important clauses before that phrase, reasonable contemplation. The object of the phrase reasonable contemplation was a dispositive ruling by the commission. What Intel makes clear is, and this is clear from the opinion, Justice Ginsburg takes you through both the 64 Amendment, the 1996 Amendment, and shows that the statute was expanded, as Justice Barrett says in ZF Automotive, to include not just traditional judicial proceedings, but to include administrative and quasi-administrative proceedings. This is what Intel held. Intel did not treat the opportunity for appellate review that would have happened and followed that proceeding as what was contemplated. When you step back and just look at the big picture, the point of 1782, I mean, the point is to provide a mechanism for international litigants to get evidence and discovery in this country for use in those other countries. Why does this case fall precisely within the purpose and goal of 1782? Respectfully, Your Honor, that doesn't quite state the purpose of 1782 per ZF Automotive. Justice Barrett's explained the point of the statute is comedy. In order for there to be a comedy interest, there must be some organ of a State seized the jurisdiction. Well, and if you had an American litigation, wouldn't we want them to, if necessary, be able to get discovery in Germany, for example? Well, so that's – but consider what you've asked there. Consider the premise. If there was an actual pending litigation here in the United States – let me take that one step further because I think you've hit something very important. Would you agree that here it's more than just a twinkle in counsel's eye, that they've got counsel, they've drafted pleadings, they've gotten some evidence, they've gotten evidence in two other 1782 proceedings? It seems like it's highly likely that there will be a lawsuit in Germany. Well, except all evidence to the contrary, Your Honor. All evidence to the contrary? They've got money doing two other 1782s. Well, no, but that's – They have evidence. But this is – They're drafting pleadings. They have German counsel. And you don't think that stands for anything? No. Okay. Why? Because that's not what Intel said. That totally ignores Intel's analysis. The Intel analysis, right, the Court spent a considerable amount of time detailing how the proceedings unfolded before the commission. Critical to the Court's analysis was the fact that there are substantial procedural rights that it had attached in that proceeding. The Court didn't hold that once you get to the European court of first instance, that then is the proceeding. The Court found that the commission was the tribunal for purposes of the second statutory factor. That doesn't exist here. There are no substantial procedural rights that have attached. There is no right to appellate review because there is no proceeding. Meanwhile – I just – I don't believe we're having this conversation. I mean, this is Intel. It is not necessary for the adjudicated proceeding to be pending at the time the evidence is sought, but only that the evidence is eventually to be used in such a proceeding. But, Your Honor, that's not what the – the holding of – That's a quote from the case. Your Honor, take – Is that not a quote from the case? Let me get – let me get my case in front of me. Do you think Judge Sullivan misread it? No. No, of course not. Of course not. But what – It's quoting an all-review article from 1965. And then we, as a court, go on to then make clear that you have to have more than a subjective intent to undertake a legal action. Instead, you have to provide some objective indicium that the action is being contemplated. That's exactly what the district court did here, right, concluded that that requirement of objective indicium had been met. Now, I respectfully disagree, because even on that test – Let's assume that was the test for a second, okay? You have – you have then an applicant who insisted upon the forum selection clause when they were sued here, stood upon that clause, okay, and then has now used that clause as a sword and a shield to commence four 1782 proceedings over the last two and a half years across multiple jurisdictions and hasn't sued. Two and a half years. In what way is that lawsuit – Well, if we're dealing with the district court's conclusion that there was sufficient evidence to support an objective indicium that the action was being contemplated, that's one thing. But you're mostly making legal arguments that seem to be suggesting that Intel doesn't say what it says, that our court cases, including certain funds, doesn't mean what it says, and that 1782 is a bad idea. No, no, no, no. Well, that means write your congressman, but it doesn't mean that we get to fix this for you. Respectfully, Your Honor, if you take a look at the holding, right, the word reasonable – the phrase reasonable contemplation, it does not say – and Intel certainly can't be read to say, by the way, this is what you need to do to get pre-suit discovery from Americans if you want to sue abroad. That would be a very different opinion, and this would be a very different statute, right? How could we account for the fact that the Supreme Court spends a considerable amount of time explaining, repeatedly emphasizing that there are substantial procedural rights? Your questions to me ignore that fact, right? Why would the Supreme Court spend all this time discussing whether or not substantial procedural rights had attached to AMD and Intel and then focus on the fact that they have the right to submit evidence, both sides, as well as the right to appellate review? What would be the – it would be a lot easier to say, yeah, pre-suit discovery is allowed. That's what the statute means. But that's not what it said. Why would they say that a proceeding doesn't have to be pending or imminent? Oh, because what the Supreme Court was doing there was – so you have to go back and look at the statutory analysis, right? In the 1964 amendments, the court – the Congress expands it so that it is clear that it includes quasi-adjudicative and administrative proceedings, right? So when it rejected Ishihara's imminence requirements, what it was saying – right? Because in Ishihara, that case had relied upon a case in which a criminal magistrate from Brazil had come to this court seeking assistance from this court, and this court said, no, there's no imminent adjudicative proceeding. Meanwhile, the 1996 amendments clarified the amendments from the 60s to make it clear that this was for purposes of a quasi-adjudicative proceeding. That's what the Senate notes say on this, right? One of the reasons why they changed the statute was because there were repeated requests, not from private litigants, but from special magistrates abroad. That's what the removal of the pending requirements was designed to do. What's your best case for the proposition that for private litigants, there has to be a pending litigation? Intel. Intel and ZF Automotive. So we've read Intel. Well, I would take you to ZF Automotive then, right? Take a look at ZF Automotive, right? It says that you have to have a pending litigation in order to get discovery in 1782 for a private dispute? How could there possibly be a comedy interest? Does it say that? I believe – I think that's fairly inferred from the following – from the following feature of that decision, sir, which is what the Court says there is, from the beginning, the statute is about comedy. This is why arbitration tribunals – in that case, there was an ad hoc tribunal comprised of Lithuania and Russia. Right. So it doesn't extend to private litigation in arbitrations. But it doesn't say that for contemplated but not yet commenced litigation in an actual tribunal, you don't get discovery for a private dispute. It just doesn't say that. Well, that – but here – It wanted to say that, but it doesn't. No, no, no. But it's not a question of wanting to say it versus not saying it. How is there – how could there possibly be a comedy interest, a concern about with respect to another sovereign, when there is no sovereign – when there's no organ of the sovereign that's been implicated here? There is no court. There is no sovereign interest until they seize a court of jurisdiction. The point of the statute is to aid the foreign tribunal. All right. Well, you've got two minutes for a rebuttal. We'll now hear from Mr. Harwood. Okay. You may proceed. Thank you. May it please the Court, Chris Harwood for Apelli Orthogen. Starting where you just left off with Dr. Schottenstein's counsel, the Meese court from this circuit addresses whether 1782 is available for private litigants, noting that it had not – this circuit had not considered that before and found that nothing in Intel indicated it wasn't available for private litigants, and it was. This is – case is a straightforward application of 1782. Well, look, I guess there can still be a challenge or questioning as to the decision as to whether there was an objective indicium of litigation here. What are you guys waiting for? What we're waiting for is under German law. What's the statute of limitations in Germany? It has not run because we are pursuing the evidence here. The way it works, the pleading system works in Germany. You must plead your claims as well as your damages. So Orthogen could plead its claims. Do you have unlimited time to bring an action in Germany even if this takes 10 years? It is told while Orthogen is pursuing this evidence, and if it brought suit now, it would risk that the proceedings would conclude before it obtains whatever additional evidence this court and the other courts where Orthogen is seeking evidence may allow it to obtain. And if that happened, it wouldn't be able to obtain its full damages, which is why it's sensibly waiting here. At the end of the day, the question of whether the prospective nature of the proceeding is an appropriate candidate for discovery, it is. As Your Honor noticed, certain funds makes very clear that reasonable contemplation is satisfied where the petitioner provides some objective indicium that the action's being contemplated here. Orthogen's done everything that the cases in this circuit suggest is sufficient for showing that objective indicium. Orthogen's done more. It not only retained counsel, it identified its claims and theories for liability, showing how it's going to plead breach of contract and fraud based on, among other things, the admissions, the verified admissions in Dr. Schottenstein's prior litigations that he filed, indicating that he underreported the patients that he treated underpaid Orthogen. Orthogen could bring suit right now, as I mentioned. It's identified exactly how it's going to do it. It sent demand letters to Dr. Schottenstein and his co-licensee. It has done all the things to show objective indicia. As I mentioned, the only reason it hasn't done it is because if it did it now, it would be acting irresponsibly. Look, I mean, I think I guess what I do hear Mr. Althovet's frustration in the sense that, I mean, this is a statute that permits foreign litigants to come here, get discovery they could never get as domestic litigants, and get evidence they could never get in their own countries from litigants. It just seems like what are we just asking our citizens and our corporations to fund litigation around the world? You know, our corporations are going to be at a huge disadvantage, I imagine, relative to a German corporation. Well, actually, that's not the case because under 1782 courts have discretion, district courts have discretion to authorize discovery, to condition discovery that the 1782 applicant is seeking on the 1782 applicant providing discovery for the subject of the 1782. We have cited cases to that effect. There is some limited ability to do that. That was not even sought here. That was not sought here. This is not a case about – This is not the worst case scenario. No, this is not a case about the appellants here wanting discovery. This is the case where the appellants are using this argument as a sword and a shield, as Judge Broderick found below. They didn't seek discovery. They could have done that. They just argued the arguments they're making because they are trying to avoid having to provide orthogen with evidence to show the true scope and extent of the fraud and allow orthogen to bring a claim and pursue litigation for the full scope and extent of its damages. This is also – With respect to – I want to just move quickly to the Forum Selection Clause. So I think Sir Althafed's argument is that if you include a Forum Selection Clause, you're basically signing up for the discovery rules of the forum. And so, I mean, that's not crazy. It's not explicit. And certainly sophisticated parties presumably could negotiate those terms in their contracts if they wanted to. But, I mean, what about the sort of at least superficial appeal of that's what a Forum Selection Clause is about? Well, there are cases that we point to in our briefing where when, as here, there's a Forum Selection Clause that chooses a forum that is receptive to 1782 discovery, which no dispute exists that Germany has long been receptive to 1782 discovery. U.S. courts have recognized this for an extraordinary long time. And where there's also no provision suggesting that the law that's to be applied in the foreign forum somehow limits evidence-gathering tools, in those circumstances, the Forum Selection Clause has been found by courts not to weigh against discovery. That is also, though, an issue. I mean, I think that is 100 percent right, but it's an issue that this Court doesn't actually need to address to affirm the lower court, because the district court here said, you know, look, I understand the argument that appellant is making. I will, even if I assume, discount the argument, that orthogen, that I just made here. Even if I assume in Dr. Schottenstein's favor that the Forum Selection Clause would counsel against the one consideration that counsels against discovery here, all the other considerations favor discovery. And so the district court exercised his discretion to authorize the discovery, which is exactly the analysis that in the Bonocca case that this Court recently decided, this Court said was an appropriate analysis. And so you wouldn't disagree that parties can negotiate away 1782 rights if they want. Exactly. And that, of course, did not happen here. And so you have experts, you have our German lawyer and the appellant's German lawyer, having submitted competing opinions on whether the German Forum Selection Clause here would, you know, would be interpreted by a German court to preclude 1782 discovery for the reasons we've articulated in our papers. We think our German expert has the better of the view on that. Appellant's German expert actually vacillated. They first argued that the Forum Selection Clause is invalid when that was convenient to the Schottenstein parties, and then when that argument no longer was convenient, they argued, oh, it's valid, but no, it precludes 1782 discovery. So, you know, in terms of evaluating the experts' opinions on that issue, I think it cuts in favor of Orthogen. But, again, that's an issue that, you know, on its face, the Forum Selection Clause doesn't preclude 1782 discovery. But when you consider all the factors, the first factor, the fourth factor, which appellants didn't even challenge in their opening brief here, so it's waived, Judge Broderick also found favored Orthogen. When you consider the second factor, whether there's the receptivity of the German court to the discovery, here the appellants challenge the authoritative proof standard. That is the standard in this circuit. But whatever standard is applied, the appellants never presented any evidence, any information whatsoever to challenge the receptivity of the German court to the discovery Orthogen is seeking. Orthogen, by contrast, showed through its German experts' statement that there's nothing to suggest, no reason to believe that a German court would not be receptive to discovery, particularly given the long history of German courts being receptive to the discovery. And so whatever standard applies there on the second discretionary factor, it would favor Orthogen. So all things considered, on balance, the district court's conclusion that the discovery here was warranted and authorized is well supported and subject to the high standard of review that applies in that circumstance. I had a quick question about the counterclaims. It seems hard to tease out of 1782 the right to make counterclaims or to a jury trial for that matter or any other assortment of rights that come under the Federal Rules of Civil Procedure. But I guess I haven't found any case that affirmatively says that. Do we need to say that? I haven't found any case that says that, and you don't need to say that. And the district court below also concluded that you didn't need to say that because for two reasons. One, the court found correctly that the counterclaim that they're seeking to bring, you know, which is a counterclaim based on the German form selection clause, whether the 1782 discovery is a breach of that, that that counterclaim, that argument was waived because the Schottenstein parties did not raise that claim in their initial 1782 application. They relied on Rule 13 to try to get around the waiver argument. But Rule 13 doesn't help them because Rule 13 says you don't need to reassert a claim previously raised in another matter. But there was no prior matter that the Schottenstein parties had raised that claim when they brought, when they raised their objection to the initial Schottenstein in 1782. So the argument's waived. In any event, even if it wasn't waived, it would be an assertion of a claim that should be, that is subject to the form selection clause that they're trying to use. It's a claim that Orthogen violated 1782, or I'm sorry, violated the form selection clause and is subject to a claim for damages under German law for having done so. That's wrong, but that's a question of German law. That is a dispute, that would be a dispute if raised between the parties that would be subject to the, to the German form selection clause appropriately raised in Germany, decided in Germany. And this Court's admonitions, including in Furstenberg, about avoiding battles by affidavit where the Court's being put in a position to get into the weeds of foreign law, that would be exactly what a Court would be, U.S. Court would be doing if it were considering such a counterclaim. And so for all those reasons, that — Well, Schottenstein didn't even ask for this, right? I mean, the argument now is that it's, that the district court erred by not sui sponte, giving them an opportunity to amend. Correct. That's a different issue with a leave to amend. And no, yes, the Schottenstein party's never asked for leave to amend, and there's no error in a district court not sui sponte, offering what a party has never asked for. Thank you. Thank you very much. We'll now hear from Mr. Altebeck for a minute. Over to you both. I'd like to turn to the Atlantic Marine point that we raised. I think the district court, regardless of whether you ultimately agree with me on Atlantic Marine, did not consider the forum selection clause, did not weigh it in connection with the bargain for rights of the parties to litigate a dispute under German civil procedure. How did the district court not consider that? The district court heard your arguments? The district court saw the forum selection clause? What did the district court need to do that he didn't do? Well, there's no discussion of the fact that we bargained for rights to have any dispute litigated in Germany. There was no consideration of this. You just lost on the judge. I mean, that's what a forum selection clause is. I do, because there was not analysis there. And meanwhile, the other problem that I have here is, under Atlantic Marine, the court held, obviously in a different context, but one that is analogous, because you are dealing with access to a federal venue and a federal forum and what the applicability of a mandatory forum selection clause is, the court says that in all but the most exceptional cases, the forum selection clause controls. And in the second portion of that opinion, the court goes so far as to basically craft an exception to Claxon and says, even when the court is then sitting, you don't get the benefit of the home state rule. You have to look at what the forum selection clause was. Here, the court has said that the forum selection clause should be controlling in all but the most exceptional cases. And as is particularly pertinent here, what that means is that the only thing that's relevant in terms of whether of the exercise of discretion is whether or not there's a relevant public interest, not a private interest. Thus, when an interested person comes to the court and says, without anything else, they would like the discovery because they'd like pre-suit discovery, that doesn't count for anything. That's a private interest. Again, this goes back to ZF Automotive. The point of the statute is comedy. If you have no court seized of jurisdiction abroad, there's no comedy interest, period. Meanwhile, what you have here is you have a situation in which we have bargained for rights under the ZPO. There is no discovery under the ZPO. And if I could bring this back to Intel in the counter, forum selection clause. It's not a discovery rule selection clause, right? Oh, but no. I don't think you do. Well, so, I mean, do you have some cases that show this? That if you, that if I, choosing a forum, you have agreed to waive any ability to use 1782? I don't think you've waived any ability. You have to go and get permission from the foreign court to come here. How could it be otherwise? You have a German court adjudicating a proceeding according to its rules, assuming they ever filed one. There's no such thing as discovery. There are principles that govern how that is supposed to happen. Meanwhile, you can't just run off into another court. Take, for example, the BM Brazil case, which I keep referring back to, which I find to be a great case because the rigor with which the court analyzed the situation was extraordinary, right? It didn't apply a mechanistic tallying of factors. The court went through there very carefully. And what the court had in front of it was not a letter rogatory. It had a case management order from the English High Court. The English High Court had authorized discovery. The court went through that case management order very carefully and tailored the discovery. You have active judicial supervision of a case that happened there. Here you have none of that. Here they're inviting us to go and take reciprocal discovery, which we've declined to do so far because that seems insane. There's no lawsuit pending on this. We're both going to start taking discovery when there's not a pleading anyplace? They haven't pled anyplace. Meanwhile, I attempted to do that. We attempted to do that. We attempted to do what? Counterclaim, to raise that issue of the discovery. You didn't attempt to get discovery. No. I haven't made an application to the district court yet. We have moved to quash below. The case is before Judge Parker now. They serve subpoenas. We moved to quash. And that's been — that is continuing to be litigated on that score as to whether or not the subpoenas can be enforced. We've moved to quash. They've moved to compel. And then here, to the point of the counterclaim, German law recognizes the duality of forum selection clause. It recognizes that it's both — has a both prorogatory function, right? It tells you which court you have to go to. But it gets treated as a clause just like any other, and a breach of it gives rise to an action for damages. So here, we should have been allowed to leave to amend because the court is basically using both cases against us rather than — 7882 is a discovery rule. You're suggesting that it allows you to assert a breach of the forum selection clause for damages? We are in a federal court. The federal rules of civil procedure apply to all proceedings. See Rule 81. And it allows you then to a jury trial and to all the other rights that come with a civil cause of action. We'll have to litigate that and see how that turns out. We're way over, but thank you. We'll reserve the decision. Thank you, Your Honor. Thank you.